IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

RICHARD J. THAYER,

                Plaintiff,

        vs.                              **Case No. 06-4028-RDR**

CITY OF HOLTON; BRAD
MEARS; and DAVID LANNING,

                Defendants.

_____

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff alleges that he was terminated from his position as a dispatcher in retaliation for the exercise of his First Amendment rights to freedom of speech and because of his age.  Plaintiff brings this action against:  the City of Holton; David Lanning, the Chief of Police of the City of Holton; and Brad Mears, the City Manager of the City of Holton.  Plaintiff alleges a violation of 42 U.S.C. § 1983 and the Age Discrimination in Employment Act (ADEA), 28 U.S.C. § 621.

UNCONTROVERTED FACTS

Plaintiff was born in 1960.  He began working for the City of Holton in 1985 as a dispatcher and held that position until September 7, 2005 when he was terminated against his will.  When plaintiff was terminated, defendant Lanning was the Chief of Police and defendant Mears was the City Manager.  Defendant Lanning had been Chief of Police since 2000.  The City of Holton is a relatively small town.  The Holton Police Department had seven

police officers in 2005.

A female Holton resident named Rustie Miller tape-recorded two conversations she had with plaintiff.  Plaintiff did not know the conversations were being recorded.  The first recorded conversation occurred in June 2005.  In the conversation, plaintiff referred to defendant Lanning as a "dumb college boy," a "dumb son-of-a-bitch," a "big shot," and a "know-it-all."  He also accused defendant Lanning of searching for pornography on the Internet.

In late June 2005, Miller contacted defendant Lanning and played the tape of the June recorded conversation with plaintiff. Prior to this, defendant Lanning had dealt with complaints Miller had made to the police department about loud music, noise and speeding, as well as complaints about one of the City of Holton police officers, Officer Budde.

On July 5, 2005 defendant Lanning posted a memorandum in the police station which stated in part:

> It has been brought to my attention that there have been derogatory conversations with some people within this community in reference to members of this agency.  I cannot put into words how disappointing this is.  Like any group, there will be disagreements and conflicts, however airing those issues with members of the public outside the department is unacceptable.
>
> I would refer you to HPD General Order M1201-13. "Members shall support the policies, procedures, and orders, of the Holton Police Department and shall not criticize or ridicule the Department, its policies, procedures, orders, or **PERSONNEL** by speech, writing, or other expression where such interferes with the maintenance of discipline or otherwise undermines the morale and effectiveness of the Department.

Defendant Lanning did an evaluation of plaintiff for the year ending July 13, 2005.  He discussed the evaluation with plaintiff. The evaluation states in part:

> Has of late been involved in gossip and communications with individuals within the community about co-workers that negatively reflect on this agency.  Personal opinions should be kept to one's self or addressed directly so those issues may be resolved for the benefit of the organization.

Under the title "Mutually Understood Goals" the evaluation states: "Will cease talking to members of the public about personnel issues with co-workers.  Those issues that need to be addressed should be done through the chain of command."

The second conversation with plaintiff tape-recorded by Miller occurred on August 13, 2005.  Plaintiff's wife was also present during the conversation.  It was a rambling discourse.  In part, it concerned:  a claim Miller had made against the City; how Miller should proceed with the claim; whether she should settle; how the City would handle the claim; and how defendant Lanning and others might react to the claim and to Miller.  During this talk, plaintiff referred to defendant Lanning as a "prick" and "dumber than a fucking . . ."  Plaintiff referred to defendant Mears as a "gutless piece of shit."  Plaintiff also said that Marlin White, the Holton city attorney, was "worthless as tits on a boar hog." Plaintiff encouraged Miller to pursue the claim which regarded the alleged actions of Officer Budde, although he advised her not to go to the newspaper with it.  To reiterate, plaintiff did not know

3

that Miller was recording these comments or that she would reveal the contents of the conversation to anyone.

However, defendant Lanning was provided a tape of the second recorded conversation.   After listening to the tape, defendant Lanning considered taking action against plaintiff.   He consulted a book regarding the rights of police officers, and he consulted with defendant Mears and city attorney White.   He was advised by city attorney White that he could fire plaintiff on the basis of plaintiff's recorded comments because those statements were not protected by the First Amendment.

On September 7, 2005 defendant Lanning met with plaintiff and gave him the choice of resigning or being terminated.   Plaintiff refused to resign and was terminated.   The city attorney was present at the meeting.   The letter of termination stated:

> It has been brought to my attention that you were involved in a conversation with a member of the public on or about August 13, 2005.  This conversation took place on the square area of Holton, which is a public place. During the conversation you were clearly critical of myself by saying "he's dumber than a fucking..."  You were critical of Mr. Mears by saying he was a "prick" and that he is "a gutless piece of shit."  Also you were critical of Mr. White by saying he was "worthless as tits on a boar hog."  However, most disturbing was that you encourage a person who was threatening legal action against the City of Holton and the Holton Police Department not to settle or enter into negotiations to resolve the matter by stating "Don't do it.  I'd fucking hang tough.  They need to be taught a lesson" in addition to other derogatory statements.
>
> By involving yourself in this conversation you are in violation of HPD General Order M1201-8, Conduct unbecoming; HPD General Order M1201-13, Criticism of

4

> Policies and Procedures And/Orders; HPD General Order
> M1201-15.3, Dissemination of information; HPD General
> Order M1201-50, Holton Personnel Code.
>
> Due to the serious nature of these violations and the
> fact that you had previously been counseled about making
> derogatory comments about the Holton Police Department
> and it's personnel in the past, I am at this time
> notifying you that it is my intention to terminate your
> employment with the City of Holton effective immediately.
> I have attached a copy of the City of Holton grievance
> procedure for your review.  I am also including a copy of
> the transcript of the conversation.

A regulation governing the Holton Police Department provides that members of the department shall conduct themselves on duty and off duty in such a manner as to reflect most favorably on the Department.  "Conduct unbecoming a police officer shall include that which brings the Department into disrepute or reflects discredit upon the officer as a member of the Department or that which impairs the operation or efficiency of the Department or member."  General Order M1201-8.

Another regulation states that members of the department shall not criticize or ridicule the Department or its personnel by speech, writing or other expression "where such interferes with the maintenance of discipline or otherwise undermines the morale and effectiveness of the Department."  General Order M1201-13.

Defendant Lanning believed that plaintiff had violated these regulations with his comments to Rustie Miller.  Defendants also assert that plaintiff was subject to discipline under the personnel policies of the City of Holton which provide for disciplinary

action against "[d]iscourteous or disruptive conduct or other offensive behavior in public, to the public or to employees and officers of the city."

Plaintiff filed a grievance with the City of Holton over his termination.  The grievance did not allege age discrimination.  The grievance was denied.

Plaintiff claims that defendant Lanning made a comment in June of 2005 that the department was "getting too many old-timers around here.  Need to get rid of a few of them."  Plaintiff stated that an "old-timer" was someone who had been with the department for a long time, regardless of their actual age.  At the time of his termination, plaintiff had been with the department longer than all of the employees except one.  Plaintiff, who was 45 years old when he was terminated, was replaced by a 40-year-old woman.

Officers must rely upon dispatchers for their personal safety.  It is important for officers to be able to trust dispatchers and for dispatchers to be able to trust the officers because lives are at risk.

In the summer of 2005 plaintiff and his wife had numerous conversations with Rustie Miller which were instigated by Miller and during which she pleaded for their help.  During these conversations, Miller would complain about being harassed by Officer Budde and being in fear of her life.  Plaintiff and his wife advised Miller on numerous occasions to speak to defendant

Lanning or defendant Mears or the city attorney or the mayor.
Plaintiff also recommended that Miller seek legal counsel.

Rustie Miller made a complaint that Officer Budde had
unholstered his weapon in order to scare Miller. Defendant Lanning
had the complaint investigated. He received a written memorandum
about the alleged incident from Officer Budde and spoke directly to
Officer Budde about the matter. Ultimately, Officer Budde was
reprimanded for "horseplay/rough housing." After this reprimand,
Officer Budde stopped Miller and issued a warning citation for a
traffic violation. Miller complained that Officer Budde
intentionally turned around Miller's height and weight on the
citation so that her weight was listed as 504 pounds.

In August 2005 an attorney not in good standing sent a demand
letter to the City of Holton demanding payment of $650,000 to
Miller because of various acts by Officer Budde. The letter
threatened suit against the City. On August 30, 2005 Miller filed
a petition in state district court alleging that Officer Budde was
stalking her.

On September 7, 2005 Miller met with defendant Lanning and
other city officials, including defendant Mears. Miller's attorney
was not present at the meeting. During the meeting Miller accused
plaintiff of misleading her, causing her to be paranoid and causing
her to believe Budde was out to get her. Miller also promised to
dismiss the stalking petition she had filed. Plaintiff was

terminated later the same day.  Two days later, Miller's stalking
petition against Budde was dismissed.

Defendant Lanning has stated that plaintiff's comments
disrupted the ability of he and another officer to do their duties
because they had to react to and consider what was on the taped
conversation.  Defendant Lanning has also stated that plaintiff's
comments caused him to lose trust in plaintiff, so that he could no
longer post sensitive information on the bulletin board in the
police department.  He did not trust plaintiff not to discuss
confidential personnel and criminal matters with the public.

Plaintiff has stated that he was joking when he said that
defendant Lanning was "dumb," defendant Mears was a "prick" or
"gutless" and that the city attorney was "worthless."   When
defendant Lanning denied plaintiff's grievance he stated:

> It is my contention that Mr. Thayer's comments were made
> as an extension of a personal dispute he has with Mr.
> Mears, the City of Holton and myself.  I find it
> indisputable based upon Mr. Thayer's comments that there
> is a strong dislike of Mr. Mears, [and] other members of
> the City staff, including myself.  This opinion was
> emphasized by Mr. Thayer when I asked him as to the
> reason for making the statements that were recorded and
> he stated "I was probably pissed off about something, but
> I can't remember what."

Plaintiff does not dispute the accuracy of this statement.

SUMMARY JUDGMENT STANDARDS

Under FED.R.CIV.P. 56, summary judgment is appropriate in this
case if defendants demonstrate that there is "no genuine issue of
material fact" and that defendant is "entitled to a judgment as a

matter of law." FED.R.CIV.P. 56(c). This court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party, which is the plaintiff in this case. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.) cert. denied, 537 U.S. 816 (2002). A "material" fact is "essential to the proper disposition of the claim." Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). A "genuine" issue of fact exists if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler, 144 F.3d at 670 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Defendants bear the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Spaulding, 279 F.3d at 904 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Defendants must attempt to meet this burden by pointing "to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.) cert. denied, 506 U.S. 1013 (1992). If defendants meet this initial burden, then the burden shifts to plaintiff to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Spaulding, 279

9

F.3d at 904 (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); <u>Anderson</u>, 477 U.S. at 256, 106 S.Ct. 2505; <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. 2548. Plaintiff may not rest upon his pleadings to meet this burden. <u>Anderson</u>, 477 U.S. at 256; accord <u>Eck v. Parke, Davis & Co.</u>, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, plaintiff must set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for plaintiff. <u>Mitchell v. City of Moore, Oklahoma</u>, 218 F.3d 1190, 1197 (10th Cir. 2000). The facts should be identified by reference to an affidavit, a deposition transcript, or a specific exhibit. <u>Id</u>.

Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex</u>, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

FIRST AMENDMENT RETALIATION

There is a four-part test for determining whether a public employer retaliated against a public employee in violation of the employee's First Amendment rights. First, the court must determine whether the employee's speech involved a matter of public concern. Second, if the public concern requirement is satisfied, then the court balances the employee's interest in commenting upon matters of public concern against the interest of the governmental entity

10

in promoting the efficiency of the work it pursues through its
employees.  This is sometimes called "Pickering balancing."  Third,
if the employee's interest outweighs the interest of the
government, then the employee must show that the speech was a
substantial factor or a motivating factor in the negative
employment action.   Fourth, if the employee shows that the
protected speech was a substantial factor, then the burden shifts
to the employer to show it would have taken the same action against
the employee even in the absence of the protected speech.
Deschenie v. Board of Education, 473 F.3d 1271, 1276 (10th Cir.
2007).

Public Concern

Defendants argue that plaintiff's engagement with Ms. Miller
and his wife in August 2005 did not involve matters of public
concern.  Judging whether a person's speech involves a matter of
public concern requires a court to examine the "content, form, and
context of a given statement, as revealed by the whole record."
Connick v. Myers, 461 U.S. 138, 147-48 (1983).

The Supreme Court has further stated:

> "public concern is something that is a subject of
> legitimate news interest; that is, a subject of general
> interest and of value and concern to the public at the
> time of publication. . . . [C]ertain private remarks,
> such as negative comments about the President of the
> United States, [also] touch on matters of public concern
> and should thus be subject to Pickering balancing."

City of San Diego v. Roe, 543 U.S. 77, 83-84 (2004).  "An employee

who makes an unprotected statement is not immunized from discipline by the fact that this statement is surrounded by protected statements." <u>Waters v. Churchill</u>, 511 U.S. 661, 681 (1994).

In the instant case, plaintiff's speech was part of what plaintiff thought was a private conversation taking place in a public area.  There was no effort or intent to educate or inform the general public regarding any police matter.  The issues being discussed largely involved:  the personalities or working styles of public officials, such as the police chief and the city manager; tactically how a claim against the City should be advanced; how city officials might react to the claim; and whether to settle the claim.  The court does not believe these topics were matters of legitimate news interest or of value and concern to the public. See <u>Campbell v. Hamilton County, Ohio</u>, 78 F.Supp.2d 713, 723 (S.D.Ohio 1999) (inside advice to a probationer prior to her appearance before a judge, who was allegedly disparaged by the comments, does not touch on a matter of public concern); <u>Marinoff v. City College of New York</u>, 357 F.Supp.2d 672, 684-85 (S.D.N.Y. 2005) (private philosophical counseling sessions do not constitute speech on a matter of public concern).  Law enforcement policies, the interaction of law enforcement officers with the general public, and the suppression of crime were not topics of discussion.

Furthermore, plaintiff has admitted that some of the comments singled out as objectionable to defendants were false.  Some courts

have held that recklessly false statements by a public employee
have no First Amendment protection. Brenner v. Brown, 36 F.3d 18,
20 (7th Cir. 1994); see also, Wulf v. City of Wichita, 883 F.2d 842,
859 n. 24 (10th Cir. 1989) (stating it is difficult to see how a
recklessly false statement could be viewed as addressing a matter
of public concern). Other courts have considered this factor to be
relevant to the Pickering balancing process. Johnson v. Multnomah
County, 48 F.3d 420, 423 (9th Cir.) cert. denied, 515 U.S. 1161
(1995) (reviewing multiple cases). Plaintiff had indicated that he
may have been joking in some of his comments. Nonpolitical joking
remarks are not given First Amendment protection. See Lautermilch
v. Findlay City Schools, 314 F.3d 271, 276 (6th Cir. 2002) cert.
denied, 540 U.S. 813 (2003)(inappropriate jokes by a substitute
teacher). The relatively private and informal setting and limited
audience for the comments are factors suggesting that the comments
were not matters of public concern. See Button v. Kibby-Brown, 146
F.3d 526, 531 (7th Cir. 1998); Roe v. City and County of San
Francisco, 109 F.3d 578, 585 (9th Cir. 1997). Denigrating or
defamatory remarks are also not ordinarily afforded First Amendment
protection. See Taylor v. Carmouche, 214 F.3d 788, 793 (7th Cir.
2000) cert. denied, 531 U.S. 1073 (2001) (calling an office
superior a "racist"); Brenner, 36 F.3d at 20 (calling supervisor
"devious and sadistic"); see generally, Waters v. Churchill, 511
U.S. 661, 672 (1994) ("we have never expressed doubt that a

13

government employer may bar its employees from using . . . [an] offensive utterance to members of the public or to the people with whom they work . . .[and] . . . we have never suggested that the Constitution bars the governor from firing a high-ranking deputy for" being robustly critical of the governor).

Examining the various circumstances of the speech in question, the court concludes that it did not involve matters of public concern.

<u>Pickering Balancing</u>

Assuming that plaintiff has at least a limited First Amendment interest in making the comments for which he was terminated, the court believes this interest is far outweighed by the defendant's interests in the effective functioning of a police force.

The Tenth Circuit has recognized the importance of confidentiality and loyalty within a police department.

> "Any breach of confidentiality . . . reflects negatively on an officer's ability and competence to perform his job, and each officer's competence affects the overall effectiveness of the department." Moreover, personal loyalty and confidence are especially important among police officers, who are charged with ensuring public safety and who often must work together in life-and-death situations. . . . These concerns are even greater in a relatively small department, where a minor disturbance in morale might loom large.

<u>Lytle v. City of Haysville</u>, 138 F.3d 857, 867 (10th Cir. 1998) (quoting, <u>Melton v. City of Oklahoma City</u>, 879 F.2d 706, 715 (10th Cir. 1989) vacated on other grounds, 928 F.2d 920 (10th Cir. 1991) (en banc)). See also, <u>Williams v. Seniff</u>, 342 F.3d 774, 783-84 (7th

Cir. 2003); <u>Cochran v. City of Los Angeles</u>, 222 F.3d 1195, 1201
(9th Cir. 2000); <u>Kokkinis v. Ivkovich</u>, 185 F.3d 840, 844 (7th Cir.
1999).

A small police department is involved in this case.  The
evidence is that the officers rely closely upon each other and upon
the dispatchers.  Plaintiff, as a dispatcher, would work directly
at times with defendant Lanning.  Plaintiff's comments injured the
confidence Lanning had in plaintiff.  They injured the sense of
confidentiality within the department.  The comments violated
police department policies.  The comments also caused Lanning and
another officer to expend time on addressing that "problem" within
the police department as opposed to performing other police duties.

As in the above-cited cases, we believe that the balancing of
interests in this matter tips in favor of defendants.  Plaintiff's
interests in speaking with and giving guidance to Ms. Miller, or
making jest of Holton city officials, have little weight.  The
City's interest in having a smooth-functioning police department
which maintains confidentiality and loyalty, and which avoids
workplace disruption, is the preponderate value under these
circumstances.

Plaintiff cites <u>Waters v. Chaffin</u>, 684 F.2d 833 (11th Cir.
1982) in opposition to summary judgment.  In <u>Waters</u>, a police
officer was demoted for insubordination when, during an off-duty
conversation with another officer in a cocktail lounge, he referred

to the police chief as a "son-of-a-bitch" and a "bastard."   The
Eleventh Circuit reversed the trial court's ruling in favor of the
defendants and held that the interests in an off-duty private
conversation outweighed any countervailing governmental interest
under the circumstances of the case.

We believe <u>Waters</u> is distinguishable for the following
reasons.  First, we believe case law post-dating <u>Waters</u> indicates
that speech which does not involve a matter of public concern may
be regulated by a government employer.  See <u>Connick v. Myers</u>, 461
U.S. 138 (1983); <u>Waters v. Churchill</u>, 511 U.S. 661 (1994).  Second,
in <u>Waters</u>, the Eleventh Circuit found facts indicating that the
plaintiff and the police chief did not have a close working
relationship and that the plaintiff's comments did not have a
disruptive effect upon the police force, otherwise the decision to
discipline the plaintiff would not have been delayed for many
months.  In the case at bar, the facts concern a much smaller
police department and consequently a closer working relationship
between the employees.  Furthermore, plaintiff dispatched messages
to defendant Lanning.  In addition, there was not much delay in
imposing discipline in this case which indicates that there was a
disruptive and disheartening effect from plaintiff's comments to
Miller.

Plaintiff has also cited <u>Clary v. Irvin</u>, 501 F.Supp. 706
(E.D.Tex. 1980).  In <u>Clary</u>, three police officers in a small police

16

department were discharged because they privately were critical of the police chief in conversations with city council members.  The criticisms involved equipment shortages, personnel problems and practical difficulties facing the patrolmen, as well as some comments regarding the intelligence of the police chief and whether he actually directed the operations of the department.  The criticisms were not considered by the court to be malicious, reckless or knowingly false.  The court found that the criticisms were expressed in an effort to upgrade the police department.  In conducting the _Pickering_ balance, the court found that the substantive content, the private nature and the authoritative audience of the criticisms were items that favored the plaintiffs and outweighed any threatened or real harm to the efficiency, morale or need for confidentiality in the department.  We believe _Clary_ can be distinguished from the facts in this case.  The "criticisms" in this case have much less substance and much more vitriol.  The audience for the criticisms had no authoritative role in the operation of the police department.  The breach of confidentiality was not as severe.  Nor was the threat of damage to morale.  The plaintiffs in _Clary_ were not advising someone to proceed with the lawsuit against members of the police department, as in the instant case.  That kind of comment would appear to threaten considerable harm to the morale of a small police department.

17

In conclusion, we find that the <u>Pickering</u> balancing tips in favor of defendants.

<u>Qualified immunity</u>

Defendants Lanning and Mears contend that they are entitled to summary judgment against any damages claimed by plaintiff for retaliation against protected speech on the grounds of qualified immunity. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Boles v. Neet</u>, 486 F.3d 1177, 1180 (10th Cir. 2007)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Our prior discussion of cases involving the question of public concern and <u>Pickering</u> balancing shows at the very least that the law is not clearly established as to whether plaintiff's speech touched on matters of public concern under circumstances such that a reasonable official would understand that it was impermissible to discipline plaintiff because of his speech. Furthermore, defendants were advised by the city attorney that plaintiff could be fired because of his remarks to Ms. Miller without violating the First Amendment. Defendants were not on notice that terminating plaintiff under the circumstances of this case would violate plaintiff's First Amendment rights. Therefore, we believe defendants Lanning and Mears are entitled to qualified

18

immunity from liability for damages as to any First Amendment claim. See Flanagan v. Munger, 890 F.2d 1557, 1567 (10th Cir. 1989) (qualified immunity is enjoyed by police chief who reprimanded police officers for partial ownership of store that rented sexually explicit videos - the law regarding regulation of officers' off-duty conduct was not clearly established).

Summary

The court believes that defendants are entitled to summary judgment against plaintiff's First Amendment claim because plaintiff's comments did not involve matters of public concern and because the Pickering balance is in favor of defendants. Even if the First Amendment claim survived these tests, the court would grant summary judgment to defendants Lanning and Mears against plaintiff's damages claim on the basis of qualified immunity.

ADEA

The ADEA prohibits an employer from discharging an employee because of the employee's age. See 29 U.S.C. § 623(a)(1). Plaintiff has the burden of proving that his termination was motivated in part by age. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000). Plaintiff need not show that age was the sole reason, but he must show that age made the difference in the discharge decision. See Greene v. Safeway Stores, Inc., 98 F.3d 554, 557 (10th Cir. 1996)(citations omitted). Plaintiff may use direct or circumstantial evidence of a

discriminatory motive.  Danville v. Regular Lab Corporation, 292
F.3d 1246, 1249 (10th Cir. 2002).  Circumstantial evidence is
evaluated under the burden-shifting framework of McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 802-05 (1973).  Id.  Under that
framework, plaintiff bears the burden of producing evidence to
establish a prima facie case of discrimination, then the burden
shifts to defendants to articulate a facially nondiscriminatory
reason for its actions.  See Reynolds v. School District No. 1, 69
F.3d 1523, 1533 (10th Cir. 1995).  If defendants do articulate a
nondiscriminatory reason for plaintiff's termination, then the
burden shifts back to plaintiff to present evidence from which a
jury might conclude that defendants' proffered reason is
pretextual, that is, unworthy of belief, or otherwise introduce
evidence of an illegal motive to discriminate on the basis of age.
Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1165 (10th Cir.)
cert. denied, 525 U.S. 1054 (1998).

     In this case, plaintiff has produced evidence sufficient to
demonstrate a prima facie case of age discrimination.  Defendants
have proffered that plaintiff was terminated because of the
comments he made to Rustie Miller in the August 2005 recorded
conversation.  This was the cause described in the letter of
termination as well as the cause debated throughout the grievance
procedure.  Defendants contend that summary judgment should be
granted against plaintiff's ADEA claim because plaintiff cannot

demonstrate that a genuine issue of fact exists as to whether age was a motivating factor in plaintiff's discharge.  Because defendants have proffered a reason other than age for terminating plaintiff, plaintiff has the burden to prove that the proffered reason was a pretext for discrimination.  This may seem awkward for plaintiff under these circumstances since plaintiff's First Amendment claim also contends that plaintiff was terminated because of the comments he made to Rustie Miller in August 2005.

Plaintiff has presented no direct evidence of age discrimination.  Direct evidence is evidence which "demonstrates on its face that the employment decision was reached for discriminatory reasons."  Danville, 292 F.3d at 1249.  Plaintiff has only produced evidence that in June 2005 defendant Lanning made a remark to the effect that there were too many "old-timers" in the police department and that plaintiff was replaced by a woman five years younger than plaintiff.  This evidence does not demonstrate on its face that plaintiff was fired because of his age.  See Riggs v. Airtran Airways, Inc., ___ F.3d ____, 2007 WL 2258826 (10th Cir. 2007) (statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination).  Therefore, in the absence of direct proof of age discrimination, plaintiff must produce proof of pretext to avoid summary judgment.

Plaintiff has not shown any weakness, implausibility,

21

inconsistency or contradiction in defendants' alleged reason for terminating plaintiff.  In fact, plaintiff seems to agree in this litigation that he was fired because of the comments he made to Rustie Miller in August 2005.  Hiring a somewhat younger person to replace plaintiff does not prove plaintiff's comments to Miller were used by defendants as a pretext for age bias, nor does it weaken the grounds for believing that those comments were the true reason and only motivation for plaintiff's discharge.  See <u>Bombero v. Warner-Lambert Co.</u>, 142 F.Supp.2d 196, 207-08 (D.Conn. 2000) (35-year age difference between plaintiff and person chosen for the job was not sufficient to show that employer's reasons for declining to hire plaintiff were a pretext for age discrimination). After all, plaintiff had been warned about such comments the month prior to August 2005.  Defendant Lanning's alleged remark that there were too many "old-timers" in the department also does not show pretext.  See <u>Stone v. Autoliv ASP, Inc.</u>, 210 F.3d 1132, 1140-41 (10th Cir.) <u>cert. denied</u>, 531 U.S. 876 (2000) (isolated, ambiguous, stray remark does not create a jury issue in an employment discrimination case).  The comment does not refer directly to chronological age, as opposed to years of service in the police department.  It also does not subtract from defendants' nondiscriminatory reason for terminating plaintiff.  Of course, our reference to defendants' "nondiscriminatory" reason for termination does not mean to imply that defendants did not

22

discriminate or retaliate against plaintiff because of his comments to Rustie Miller in August 2005. Such discrimination or retaliation is not illegal, however, for the reasons stated previously with regard to plaintiff's First Amendment claim.

Therefore, the court shall grant summary judgment in favor of defendant upon plaintiff's ADEA claim.

CONCLUSION

The court shall grant defendants' motion for summary judgment.

**IT IS SO ORDERED.**

Dated this 29th day of August, 2007 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge

23